UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EXAMWORKS, INC.,                                          17-CV-0080-LJV-MJR

                              Plaintiff,                  REPORT, RECOMMENDATION
                                                          AND ORDER

              v.


JENNIFER SOLTYS,

                      Defendant.


_____


## INTRODUCTION

        This case has been referred to the undersigned pursuant to Section 636(b)(1) of

Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for hearing

and reporting on dispositive motions for consideration by the District Court.    Plaintiff

ExamWork's Inc. ("ExamWorks" or "plaintiff") has filed a motion to dismiss a number of

counterclaims asserted by defendant Jennifer Soltys ("Soltys" or "defendant").    (Dkt. No.

25).

        For the following reasons, it is recommended that defendant's unjust enrichment

claim be dismissed with prejudice and without leave to amend, and that the remainder

of the at-issue counterclaims be dismissed without prejudice.    Defendant is granted

leave to amend the counterclaims alleging fraud, tortious interference, and defamation as well as her request for injunctive relief.[1]

## BACKGROUND AND RELEVANT FACTS

On January 26, 2017, ExamWorks filed a complaint against Soltys alleging various claims of breach of contract, breach of the duty of loyalty, and defamation. (Dkt. No. 1). ExamWorks claimed that Soltys, a former employee, violated an employment agreement which prohibited her from disclosing confidential information, soliciting plaintiff's customers or employees for a period of two years following the termination of her employment, or directly or indirectly competing with ExamWorks for two years following the termination of employment. On February 1, 2017, ExamWorks filed a motion for a preliminary injunction and temporary restraining order ("TRO") which was expedited by the District Court. (Dkt. No. 5). On February 9, 2017, Judge Vilardo held oral argument as to the request for the TRO, and the parties requested additional time to discuss a resolution. After a number of status conferences during which the parties indicated they were attempting to resolve the matter, Judge Vilardo heard oral argument as to the motion for a TRO on March 24, 2017. Judge Vilardo denied the request for a TRO without prejudice and scheduled an evidentiary hearing. On March 29, 2017, prior

---

[1] In her response to plaintiff's motion to dismiss the counterclaims, defendant requests leave to amend any of her claims that the Court deems insufficient pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As stated during oral argument, the Court construes this request as a motion to amend the counterclaims and, for the sake of judicial economy and expediency, will not require a separate motion to amend be filed by defendant. The treatment of a motion to amend as dispositive or non-dispositive is not completely settled, but courts in this district have held that where a magistrate judge's decision on a motion to amend effectively dismisses or precludes a claim, the motion is dispositive, while the granting of leave to amend is treated as non-dispositive. *See Mohr v. United Cement Mason's Union Local 780*, 15 Civ. 4581, 2017 U.S. Dist. LEXIS 49189 (EDNY March 30, 2017); *Zink v. First Niagara Bank, N.A.*, 13-CV-1076, 2015 U.S. Dist. LEXIS 11862 (WDNY Jan. 30, 2015); *but see Rienzi & Sons, Inc.*, 638 Fed. Appx. 87 (2d Cir. 2016) (referring, *in dicta*, to a magistrate judge's denial of a motion to amend as an order on a non-dispositive matter). Thus, it is recommended that defendant be precluded from amending the unjust enrichment claim, and it is ordered that defendant be granted leave to amend the remaining at-issue counterclaims.

to the holding of an evidentiary hearing, plaintiff's counsel agreed to withdraw the motion for a preliminary injunction without prejudice, and the parties agreed that plaintiff would file an amended complaint.

An amended complaint was filed on April 4, 2017 and an answer, with counterclaims, was filed on May 1, 2017. (Dkt. Nos. 18 and 19). On June 19, 2017, ExamWorks filed the instant motion to dismiss certain counterclaims asserted in the answer. (Dkt. No. 25). Defendant filed a response on July 14, 2014 (Dkt. No. 27) and plaintiff filed a reply on July 27, 2017 (Dkt. No. 28). Oral argument was held before this Court on August 3, 2017.

### *Amended Complaint*

ExamWorks arranges, facilitates, sells or provides the following services: independent medical reviews, peer reviews, utilization reviews, record reviews, film reviews, functional capacity evaluations, workers compensation medical reviews, disability review, bill review, Medicare set-aside and compliance, case management, x-ray, MRI and similar diagnostics, pharmacy review, pharmacy negotiation and pain management evaluations, medical expert retention, and related services. (Dkt. No. 18). ExamWorks provides these services to a number of different types of clients in the medical, legal and insurance industries both throughout the United States and abroad. *Id.*

On October 31, 2015, ExamWorks purchased the assets of Independent Diagnostic Testing Inc., d/b/a "Legal Med", a former competitor. *Id.* Soltys, an employee of Legal Med, was retained by ExamWorks and identified as a "key employee". *Id.* As a result, Soltys was given 10,028 restricted share units of

ExamWorks' stock through a letter on November 9, 2015. *Id.*, Exh. B  The granting of the restricted share units was subject to Soltys' acceptance of ExamWorks' 2008 Stock Incentive Plan (the "Plan"). *Id.*, Exh. C  On January 5, 2016 Soltys was awarded an additional 390 restricted share units of ExamWorks' stock (the November 2015 and January 2016 restricted share unit grants are collectively referred to as the "Equity Award"). *Id.*; Exh. E  The receipt of the additional shares was also conditioned on her acceptance of the terms of the Plan.  Section 14 of the Plan states that if:

> [ExamWorks] determines, in its sole and absolute discretion, that (i) a Participant has violated any of the Conditions or (ii) during his or her Continuous Service, or within one year after its termination for any reason, a Participant (x) has rendered services to or otherwise directly or indirectly engaged in or assisted, any organization or business that, in the judgment of the Company in its sole and absolute discretion, is or is working to become competitive with the Company; (y) has solicited any non-administrative employee of the Company to terminate employment with the Company; or (z) has engaged in activities which are materially prejudicial to or in conflict with the interests of the Company, including any breaches of fiduciary duty or the duty of loyalty, then the Company may, in its sole and absolute discretion, impose a Termination, Rescission, and/or Recapture with respect to any or all of the Participant's relevant Awards, Shares, and the proceeds thereof.

*Id.*, Exh. C

At some point ExamWorks began the conversion from a publically traded company to a privately held company and, as a result, was required to repurchase any outstanding restricted share units through an accelerated payment. *Id.*  This included the repayment of the Equity Award held by Soltys. *Id.*  On or about July 11, 2016, Soltys executed an Award Release Agreement in order to receive the accelerated payment of the Equity Award. *Id.*, Exh. G  On or about July 27, 2016, ExamWorks ceased public trading of its shares and repurchased all restricted share units, including those owned by Soltys. *Id.*  Soltys received a cash payment of $365,150.90. *Id.*

Throughout her employment with ExamWorks, Soltys was the National Director of Marketing and Operations.  *Id.*  ExamWorks alleges that through this position, Soltys had access to confidential information and other valuable resources.  *Id.*  Soltys signed an agreement when she accepted employment with ExamWorks which, among other things, provided that she was an at-will employee, that she would be reimbursed for all reasonable expenses incurred while performing her duties in accordance with ExamWorks' Travel and Entertainment Policy, and that in the event she was discharged without cause, she would receive nine months of severance pay and be reimbursed for all unpaid expenses (the "Employment Agreement").  *Id.*, Exh. A.  Soltys was also required to sign ExamWorks' Noncompetition and Confidential Information Protection Agreement, which provided that Soltys would not disclose confidential information and that, for a period of two years following her separation from employment, she would not solicit ExamWorks' customers, employees or consultants, she would not directly or indirectly sell similar products or services to a restricted customer, she would not directly or indirectly compete with ExamWorks, and she would not work for, advise, or have an interest in any company that competed with ExamWorks (the "Non-Disclosure Agreement").  *Id.*, Exh. A.  Soltys signed both the Employment Agreement and the Non-Disclosure Agreement on October 30, 2015.  *Id.*

ExamWorks claims that on January 18, 2017, it learned that Soltys was planning to leave ExamWorks at the end of the month and start a new, competing business.  *Id.*  Plaintiff alleges that Soltys solicited at least two ExamWorks' employees to join her, and that one employee attempted to print, copy and steal confidential information from ExamWorks.  *Id.*  Soltys was terminated by ExamWorks on January 18, 2017.  *Id.*

ExamWorks alleges that since her termination, Soltys has advertised the services of a competitive business, has met with ExamWorks' clients, and has made defamatory statements about ExamWorks and its business operations to ExamWorks' clients. *Id.*

The amended complaint asserts the following claims: (1) breach of contract against Soltys for forming the competing business, soliciting ExamWorks' employees, and taking company information, documents, and materials, all in violation of the non-disclosure agreement; (2) rescission of the Equity Award ($365,150.90) on the basis that Soltys breached the Plan; and (3) unjust enrichment with respect to the payment of the Equity Award.[2] *Id.* The amended complaint also alleges breach of the duty of loyalty and defamation, and seeks a permanent injunction preventing defendant from competing with ExamWorks in violation of the non-disclosure agreement, using ExamWorks' proprietary information, soliciting customers and employees, and making derogatory or defamatory statement about the company. *Id*.

### Answer and Counterclaims

Soltys denies all allegations of wrongdoing. (Dkt. No. 19). She admits receiving the Equity Awards and admits receiving the various documents that ExamWorks references in the amended complaint, including the Plan, the Employment Agreement and the Non-Disclosure Agreement. *Id.* Soltys denies possessing ExamWorks' proprietary information or unfairly competing with them. *Id.* Instead, she asserts that she was wrongfully terminated, and that ExamWorks has wrongfully refused to pay her severance or reimburse her for unpaid expenses in accordance with the Employment

---

[2] During oral argument, the Court asked plaintiff's counsel if ExamWorks asserted a claim of unjust enrichment and counsel answered in the negative. However, the fifth cause of action in the amended complaint is titled "unjust enrichment" and states that Soltys has been "unjustly enriched, at ExamWorks expense" as a result of the Equity Award. (Dkt. No. 18, pgs. 13-14, ¶¶81-86).

Agreement.  *Id.*  Soltys further claims that ExamWorks fraudulently induced her to remain an employee when it acquired Legal Med.  *Id.*  Specifically, she alleges that ExamWorks promised the Equity Awards, a severance payment and expense reimbursement to entice her to accept employment with the company, but that it never intended to fulfill these obligations.  *Id.*  Soltys further claims that ExamWorks has made false and derogatory statements about her character, performance, and abilities, and has surveilled and stalked her, her family and her friends at all hours of the day and night.  *Id.*

The answer asserts the following counterclaims: (1) breach of contract for failure to reimburse expenses and failure to pay severance; (2) unjust enrichment; (3) fraudulent inducement on the grounds that Soltys relied on knowingly false statements by ExamWorks when she decided to accept their offer of employment; (4) tortious interference with her business opportunities and prospective economic advantage; and (5) defamation.  *Id.*  As for a sixth counterclaim, Soltys seeks a permanent injunction preventing ExamWorks from defaming her and from surveilling and stalking her and her friends and family.  *Id.*  As to her seventh counterclaim, Soltys seeks a declaratory judgment that all of the restrictive covenants contained in the agreement are unenforceable.  *Id.*

ExamWorks moves to dismiss all counterclaims except for breach of contract and the request for a declaratory judgment as to the enforceability of the restrictive covenants.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") To meet this standard, a litigant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

*Unjust Enrichment*

The basis of an unjust enrichment claim is that a defendant obtained a benefit which "in equity and good conscience" should be paid to the plaintiff. *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012); *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) (the theory of unjust enrichment is a quasi-contract claim). To that end, the New York State Court of Appeals has held that unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create equitable

obligations running from the defendant to the plaintiff." *Corsello,* 18 N.Y.2d at 790 ("Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.") Further, New York courts consistently find that "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009); *Corsello*, 18 N.Y.2d at 790 (unjust enrichment claim not available where it simply duplicates, or replaces, a conventional contract or tort claim). Here, Soltys' unjust enrichment claim is based upon ExamWorks' refusal to pay her severance or reimburse her for certain expenses. Indeed, both of these obligations are set forth in the Employment Agreement and are the basis of Soltys' breach of contract claim. Therefore, defendant could not recover on both a breach of contract claim and an unjust enrichment claim arising from the failure to pay severance and reimbursements. See *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388-389 (1987) ("It is impermissible…to seek damages in an action sounding in quasi-contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."); *IDT Corp.*, 12 N.Y.3d at 142 (dismissing unjust enrichment claim since the fees forming the basis of the claim arose from services governed by an engagement letter).

While Soltys agrees that she cannot recover on both theories, she asserts that she is entitled to plead an unjust enrichment claim in the alternative to her breach of contract claim. Indeed, Rule 8(e)(2) of the Federal Rules of Civil Procedure permits the

pleading of contradictory claims alleging both breach of contract, or in the alternative, a quasi-contract. *Garson v. Garson*, 16 Civ. 6167, 2017 U.S. Dist. LEXIS 98450 (SDNY June 26, 2017). However, the Second Circuit has explained that a party may proceed on both a breach of contract and quasi-contract theory only in instances where there is a question as to the contract's validity or its applicability to the dispute between the parties. *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) ("all claims for unjust enrichment are dismissed as precluded under New York law and inconsistent with [plaintiff's] own pleadings because we have found valid, enforceable contracts between the parties"). Courts in this Circuit often dismiss unjust enrichment claims at the pleadings stage where it is clear that there is no dispute as to the existence of a contract between the parties or the fact that the contract applies to the subject matter of the lawsuit. *See e.g., New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (SDNY 2000) (where "both parties agree that a valid and enforceable contract exists between them, [a party] may not plead the quasi-contract theory of unjust enrichment."); *Fishman v. Philadelphia Fin. Life Assurance Co.*, 11 Civ. 1283, 2016 U.S. Dist. LEXIS 58862 (SDNY May 3, 2016) (motion to dismiss unjust enrichment claim granted where the fee dispute was governed by various insurance policies and a "claim for unjust enrichment may only survive as an alternative theory of liability when the existence of the contract is in dispute."); *Global Funding Group. LLC v. 133 Community Road, Ltd.*, 15 CV 6595, 2017 US Dist. LEXIS 71446 (EDNY May 10, 2017) (dismissing unjust enrichment claim where defendants did not dispute the existence of a valid and enforceable contract and therefore the unjust enrichment claim was "directly duplicative of the breach of contract

claim"); *Donchatz v. HSBC Bank United States, N.A.*, 14-CV-194, 2015 U.S. Dist. LEXIS 24136 (WDNY Feb. 27, 2015) ("because there clearly exists a contractual agreement governing the obligations of plaintiff and…defendants at issue in this case, plaintiff cannot maintain a plausible claim for unjust enrichment"); *compare Rothstein v. Auto Club South*, 15-CV-9391, 2017 U.S. Dist. LEXIS 56981 (SDNY April 13, 2017) (magistrate judge's recommendation to deny motion to dismiss unjust enrichment claim adopted where each side denied the existence of the contract alleged by the other and a trier of fact could conclude that "there is no contract that governs the particular subject matter in question here").

The pleadings in this case indicate that neither party disputes that the Employment Agreement is a valid contract between them which governs, among other things, the payment of severance and reimbursement of expenses. *See Answer*, Dkt. No. 18, pgs. 19, 20, 22 ("ExamWorks offered Soltys an employment Agreement with a provision for nine months of severance upon her termination…Soltys performed all of her duties under her Agreement with ExamWorks…ExamWorks has failed to pay Soltys the severance she earned under her employment agreement [and] has failed to reimburse her for expenses incurred."); *Amended Complaint*, Dkt. No. 18, pgs. 5, 8 ("As a pre-condition to Soltys' employment with ExamWorks, she was required to enter into the Agreement…Soltys did, in fact, execute the Agreement on October 30, 2015…ExamWorks terminated Soltys on January 18, 2017 for cause, including, but not limited to, violations of the Agreement.") Defendant's claim for payment of these monies is clearly dependent on a favorable reading of the Employment Agreement. Since the pleadings reflect no dispute over the existence of the Employment Agreement

and its applicability to the severance payments and reimbursements, defendant cannot assert unjust enrichment as an alternative theory of recovery for these payments. *See Hinterberger v. Catholic Health Systems, Inc.*, 536 Fed. Appx. 14 (2d Cir. 2013) (unjust enrichment and other quasi-contract claims properly dismissed for failure to state a claim where "employees previously alleged in their complaint that they were party to written employment contracts, and [defendants] have readily admitted that these contracts exist.")

Defendant further argues that the unjust enrichment claim is not duplicative of her breach of contract claim because plaintiff also benefitted from unlawfully restraining her ability to earn a living, making false statements about her to friends and business associates, and otherwise "wrongfully diverting her business relationships". To prevail on an unjust enrichment claim, a plaintiff must establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Kaye v. Grossman*, 202 F. 3d 611, 616 (2d Cir. 2000). Construing these allegations in a light most favorable to defendant, there is no specific or quantifiable benefit, such as monetary gain, received by defendant as a result these actions. *See Steinbeck v. Steinbeck Heritage Foundation*, 400 Fed. Appx. 572 (2d Cir. 2010) ("we identify no benefit derived by [plaintiffs] at [defendant's] expense and, consequently, conclude that plaintiffs' claims for unjust enrichment…were properly dismissed without merit."); *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 260 (SDNY 2012) ("A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belonged to plaintiff.") Therefore, these allegations fail, as a matter of law, to state a claim for unjust enrichment.

Defendant further argues that in the event the Court finds her pleadings to be insufficient, she should be given leave to replead. Rule 15(a) of the Federal Rules of Civil Procedure instructs courts that leave to amend should be freely given when justice so requires. *See* Fed. R. Civ. P. 15(a). However, leave to amend need not be given when the proposed amendment would be futile. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997). For the reasons stated above, defendant's unjust enrichment claim fails as a matter of law such that it would be futile to allow her to replead it. Therefore, it is recommended that defendant's unjust enrichment claim be dismissed with prejudice and that she be denied leave to amend this counterclaim.

### *Fraud*

A party has made out a claim of fraudulent inducement if it has pled: "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [a party]; and (iv) resulting damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) (*citing Ross v. Louise Wise Servs.*, Inc., 8 N.Y.3d 478, 488 (2007)). Where a fraud claim "is premised upon an alleged breach of contractual duties, and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, 11 Civ. 7801, 2012 U.S. Dist. LEXIS 51841, (SDNY Apr. 12, 2012) (internal quotation marks omitted) *(quoting McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233 (2d Dep't 1991)). Therefore, to maintain a claim for fraudulent inducement that does not merge with the breach of contract claim, a

litigant must: "(i) demonstrate a legal duty separate from the duty to perform under the contract ... ; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract ... ; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages[.]" *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted).

Soltys alleges that ExamWorks induced her to retain employment after the purchase of Legal Med by promising severance and the reimbursement of expenses, as well as by offering her restricted share units. Soltys alleges that at the time ExamWorks made these promises, it had no intention of honoring them. The promises made by plaintiff to pay severance, reimburse expenses and grant the restricted share units were part of the Employment Agreement and other contracts entered into by the parties. Because these promises were not extraneous or collateral to the parties' written agreements, Soltys' general allegations that ExamWorks entered into the contracts with no intent to honor them are insufficient to assert a claim for fraudulent inducement. *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("general allegations that a party entered into an agreement while lacking the intent to perform are insufficient to support a fraud claim").

In an attempt to show an inducement that was collateral or extraneous to the written agreements, defendant asserts, in her response to the motion to dismiss, that she accepted employment based upon plaintiff's statements that she was a "key employee" and that they "planned to retain her business contacts". During oral argument, defense counsel further argued that while Soltys relied on representations by

14

ExamWorks that they would retain and develop her as a key employee, they had no intention of doing so and were only interested in obtaining her clients and contacts. Construing the facts in a light most favorable to defendant, these allegations may be sufficient to allege a fraudulent inducement claim. *See Colodney v. Continuum Health Partners, Inc.*, 03 Civ. 7276, 2004 U.S. Dist. LEXIS 6606 (SDNY April 15, 2004) (plaintiff alleged a sufficient claim of fraudulent inducement by stating that he relied on defendant's representation that the company had strategic and business plans when making his decision to resign employment elsewhere and accept employment with the company). However, not only are these allegations absent from the counterclaims themselves, but defendant is also required to plead them in accordance with the strict standards of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires "a party to state with particularity the circumstances constituting fraud or mistake." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). The complaint "must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

Unlike the unjust enrichment claims, defendant has raised certain arguments which, if properly pled, may support a claim for fraudulent inducement. Indeed, defendant is required to specify exactly what misrepresentations she relied on outside the bounds of the contract and provide sufficient information about the statements and the events surrounding them as to fulfill the requirements of Rule 9(b). Since discovery

has not yet commenced and the action remains in its early stages, allowing defendant to replead would not result in prejudice to plaintiff. Therefore, it is recommended that defendant's fraudulent inducement claim be dismissed without prejudice. Defendant is granted leave to amend this counterclaim.[3]

### Tortious Interference

In order to state a claim for tortious interference with business relationships, a litigant must allege: (1) the plaintiff had a business relationship with a third party; (2) the defendant interfered with the business relationship; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship. *Catskill Dev. L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). Defendant's tortious interference claim is bereft of allegations regarding any specific business relationship held by defendant, the manner in which plaintiff interfered with it, and how that interference injured the relationship. Even construing all allegations in a light most favorable to defendant, she has failed to state a cognizable claim for tortious interference. *See Cont'l Indus. Grp. v. Altunkilic*, 14-CV-790, 2017 U.S. Dist. LEXIS 104884 (SDNY July 7, 2017) (without any factual allegations to demonstrate that the suppliers and customers would have continued with plaintiff but for defendant's actions, plaintiff filed to articulate an actionable claim for tortious interference with economic advantage); *Katz v. Travelers*, 16-CV-4389, 2017 U.S. Dist. LEXIS 35627 (EDNY March 10, 2017) ("Failure to identify specific business

---

[3] Defendant further argues that her fraudulent inducement claim should not be dismissed because ExamWorks, as her employer, owed her a duty of good faith and fair dealing independent of their written contracts. Defendant's counterclaims do not allege a duty of good faith and fair dealing nor do they explain when this duty arose in the course of the parties' relationship, since it is not alleged that ExamWorks was defendant's employer at the time the Employment Agreement was negotiated. Thus, if defendant elects to proceed with her fraudulent inducement claim on the basis that a separate legal duty was owed to her by plaintiff, additional information would need to be pled.

entities with which Plaintiffs had business relationships is fatal to their tortious interference with business advantage claims.")

Defendant represented, both in her response to the motion to dismiss and during oral argument, that she is able to plead this claim with more particularity. Further, discovery has not yet commenced and plaintiff will not be prejudiced by an amendment at this early juncture in the case. Therefore, it is recommended that the tortious interference counterclaim be dismissed without prejudice. Defendant is granted leave to amend this counterclaim.

### Defamation

The elements of a defamation claim are: (1) a defamatory statement of fact; (2) regarding the plaintiff; (3) published to a third party; (4) that is false; (5) made with the applicable level of fault; (6) causing injury; and (7) not protected by privilege. *East Amherst Plumbing, Inc. v. Thompson*, 12-CV-0195, 2013 U.S. Dist. LEXIS 139670 (WDNY Sept. 27, 2013). While a complaint need not specifically plead the alleged defamatory words, the pleading party must provide the opposing party with "sufficient notice of the communications complained of to defend himself." *Id.* Vague, conclusory allegations, without more, are insufficient to state a claim for defamation. *Reilly v. NatWest Mkts. Grps.*, Inc., 181 F.3d 253, 271 (2d Cir. 1999).

Here, defendant alleges that plaintiff "made false statements about [her] regarding her character, her performance as an employee, and her abilities in business to this Court and throughout the industry."[4] Even if the Court were to consider this a

---

[4] The Court interprets Soltys' defamation claim as alleging defamation *per se*, since she did not plead any special damages as required by New York State law. *See Sandler v. Simoes*, 609 F. Supp. 2d 293, 302 (EDNY 2009) ("A party alleging trade libel must establish that the communication was a substantial factor in inducing others not to conduct business with it and, unlike libel *per se*, must adduce proof of special

17

sufficient description of the defamatory statements made, there is insufficient information in the complaint as to who they were made to and the time, place and manner in which they were uttered or published. *See Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) ("The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself."); *Leung v. New York Univ.*, 08-CV-5150, 2010 U.S. Dis. LEXIS 33265 (SDNY Mar. 29, 2010) (dismissing defamation claims where complaint lacked specificity as to the content of the defamatory statements and the time, place and manner in which they were uttered); *Ives v. Guilford Mills*, 3 F. Supp. 2d 191, 199 (NDNY 1998) (dismissing defamation claim that did not identify with precision who at defendant company made the alleged statements, at what times or places, and to whom the statements were made.")

Because additional facts could rehabilitate this claim, and plaintiff will not be prejudiced at this point in the case, it is recommended that the defamation claim be dismissed without prejudice. Defendant is granted leave to amend this counterclaim.

<u>*Permanent Injunction as to Surveillance and False Statements*</u>

Finally, defendant seeks a permanent injunction preventing ExamWorks from surveilling her or her family and continuing to "utter and publish" false statements about her. In order to obtain a permanent injunction, a party must establish: (1) success on the merits; (2) the lack of an adequate remedy at law; and (3) irreparable harm if the relief is not granted. *UBS Sec. LLC v. Voegeli*, 405 F. App'x 550, 551 (2d Cir. 2011). Here, the counterclaims fail to specifically address what irreparable harm Soltys faces if

<hr>

damages in the form of lost dealings."); *Jin Yung Chung v. Sano*, 10-CV-2301, 2011 U.S. Dist. LEXIS 34989 (EDNY Mar. 31, 20110) (in pleading special damages, a litigant must allege the actual losses and causally relate them to the alleged tortious act).

the injunction is not granted and why there is no adequate remedy at law. Thus, defendant has not pled the basic elements required for obtaining an injunction.

In addition, an injunction is an equitable remedy, rather than an independent cause of action. *Silverstein v. Penguin Putnam*, Inc., 368 F.3d 77, 84 (2d Cir. 2004) (stating that "[t]he grant of injunctive relief is an extraordinary remedy" that is "equitable in nature"). Therefore, the success of a permanent injunction request is dependent upon the success of defendant's substantive counterclaims, such as defamation or tortious interference. *See Christie v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (SDNY 2010) ("as plaintiff's only substantive causes of action have been dismissed, plaintiff's claim for injunctive relief cannot stand"). As stated above, a number of defendant's counterclaims related to the injunction request are dismissed without prejudice and defendant will be permitted to replead them. As follows, it is recommended that defendant's request for a permanent injunction likewise be dismissed without prejudice. Defendant is granted leave to amend her injunction request when she amends her related substantive claims.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Jennifer Soltys' counterclaim for unjust enrichment be dismissed with prejudice and without leave to replead and that defendant's counterclaims for fraudulent inducement, tortious interference, defamation, and her request for a permanent injunction as it relates to these claims be dismissed without prejudice. Defendant is granted leave to amend her counterclaims alleging fraudulent inducement, tortious interference, defamation and her request for a permanent injunction. In the event that no objections are filed as to the

recommendations herein, defendant shall file a proposed amended answer with counterclaims on or before August 24, 2017. The parties shall appear before the Court for a status conference on Tuesday, September 5, 2017 at 10:30 a.m. Between now and September 5, the parties shall confer and select a mediator, and shall report back to the Court as to their selection at the status conference. Unless otherwise ordered or agreed to at the time of the status conference, plaintiff's response to the proposed amended answer with counterclaims shall be filed on or before September 25, 2017.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to the recommendations in this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988)*.

Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:     August 10, 2017
           Buffalo, New York

/s/ Michael J. Roemer
HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge